UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SCENTSY, INC., an Idaho corporation,<br><br>Plaintiff,<br><br>v.<br><br>B.R. CHASE, L.L.C., a Utah limited liability company; and HARMONY BRANDS, LLC, a Utah limited liability company,<br><br>Defendants. | Case No. 1:11-cv-00249-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it several discovery motions: Defendants' Discovery Motions Regarding Jeffery Palmer (Dkt. 41); Plaintiff's Motion for Determination of claim of Protection as Trial-Preparation Material (Dkt. 48); Plaintiff's Motion to Cancel or Modify "Attorneys' Eyes Only" Confidentiality Designation (Dkt. 49); and Defendants' Motion to Compel Forensic Examination of Scentsy's Computer Systems and/or Other Appropriate Relief (Dkt. 59).

## ANALYSIS

**1.    Defendants' Discovery Motion Regarding Jeffery Palmer**

Harmony asks the Court for an order: (1) compelling Scentsy and Jeffery Palmer to produce in discovery Scentsy's prior settlement agreement with Palmer individually and

his company; (2) compelling Palmer to resume his deposition and to answer questions which he was improperly instructed by counsel not to answer; (3) compelling Scentsy to designate a witness to be examined regarding Scentsy's settlement agreement with Palmer and his company, as well as communications between Scentsy and Palmer; and, (4) disqualifying Palmer from serving as an expert because of his disabling conflicts of interests and financial stake in the outcome of this lawsuit.

### A.     Settlement Agreement and Other Responsive Records

Palmer and his company once litigated claims with Scentsy similar to the claims in this case. The parties settled that case with a confidential settlement agreement. Scentsy has now identified Palmer as both a fact witness and an expert witness in this case. Harmony asks the Court to order Scentsy to produce the settlement agreement and other related documents. Harmony suggests that the agreement and related documents may evidence a bias on the part of Palmer against Harmony, and there is at least some indication that Palmer competes with Harmony in the scented candle market place.

"[T]he scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . ." Fed.R.Civ.P. 26(b). For discovery purposes, relevancy is not related to admissibility; "relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. Here, the requested material meets the discoverability standard. The settlement agreement and related documents will undoubtedly shed light on the relationship between Palmer and

MEMORANDUM  DECISION AND ORDER - 2

Scentsy. It may also reflect bias on the part of Palmer. That is enough for it to be discoverable. The Court need not review the agreement *in camera* as suggested by Scentsy, but the parties should be careful to make sure it is disclosed within the contours of the protective order in this case.

There is one caveat to the ordered disclosure. Scentsy need not produce any communications between Palmer and Scentsy's counsel covered by Rule 26(b)(4)(C). But Scentsy is cautioned that Rule 26(b)(4)(C) is not a blanket privilege protecting all such communications; it only protects those "communications between the party's attorney" and Palmer.

Finally, Scentsy's argument that this Court is not the proper forum for ordering disclosure of these documents is unpersuasive. Rule 45(c)(2)(B) does state that "the serving party may move the issuing court for an order compelling production." Fed.R.Civ.P. 45(c)(2)(B). The Utah District Court is, in fact, the issuing court here. However, the Court understands that Scentsy has a copy of the agreement and related documents, and this Court may order Scentsy to produce them. If Scentsy does not have the documents, Harmony may be required to go to the Utah court, but as explained below regarding the Palmer deposition, the Court hopes that will not be necessary.

### B.   Palmer Deposition

Similar to the Rule the 45(c)(2)(B) argument above, Scentsy argues that this is not the proper forum for requesting Palmer to resume his deposition and answer the questions he was initially instructed not to answer. Here, Scentsy cites Rule 37(a)(2), which states

**MEMORANDUM DECISION AND ORDER - 3**

that "[a] motion for an order to a nonparty must be made in the court where the discovery is or will be taken." Fed.R.Civ.P. 37(a)(2). Scentsy is technically correct. In fact, this Court has been burdened by such motions from cases pending in other jurisdictions.

In order to alleviate the burden on the District of Utah, this Court will outline how it would rule if it had jurisdiction. The parties may choose to follow this guidance, and not burden the District of Utah, but that is entirely up to the parties. However, if they choose to pursue the motion in Utah, that court may be inclined to review this Court's opinion on the issue because this is the presiding court over the merits of the case.

"A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed.R.Civ.P. 30(c)(2). Scentsy suggests that the instructions to Palmer not to answer were given to protect expert-related work product from disclosure under Rule 26(b)(4)(C). Without addressing each objection line by line, the Court will note that it is proper for Scentsy to instruct Palmer not to answer when the answer would invade the attorney-client privilege or work product doctrine. However, as noted above, the settlement agreement and related documents are discoverable, and Palmer should answer all questions related to them. Rule 26(b)(4)(C) protects only those "communications between the party's attorney" and Palmer.

The Court understands that the parties will proceed with an expert deposition of Palmer regardless of what happened in the initial deposition. Under these circumstances, the Court recommends that the parties also use that deposition to resume the deposition of

**MEMORANDUM DECISION AND ORDER - 4**

Palmer as a fact witness. During that deposition, counsel may object to questions related to the settlement agreement and related documents, but Palmer should not be instructed not to answer the questions except when necessary to preserve other privileged communication. Privilege in this circumstance does not involve communications between Palmer and Scentsy; it only involves communication between Palmer and counsel which is directly related to Palmer's role as an expert.

### C. Designated Witness

Harmony asked the Court to compel Scentsy to designate a witness with respect to topic nine in Harmony's notice of Scentsy's Rule 30(b)(6) deposition – communications of whatever kind or nature with Palmer concerning the subject matter of this litigation. Scentsy initially declined, but later designated Eric Ritter, who was already designated to testify as to other topics. Ritter was deposed on August 23, 2012.

During that deposition counsel apparently instructed Ritter not to answer questions related to Palmer's settlement agreement and the subject matter of this case. The instruction likely flows from the same reasons counsel instructed Palmer not to answer similar questions. For the reasons explained above, those questions should be answered by Palmer, and they should be answered by Ritter as well. Scentsy must designate a witness to answer the questions, or it must resume the deposition of Ritter and allow him to answer them. Alternatively, Palmer's answers to the questions may alleviate the need for such a deposition, but the Court will leave that to Harmony's discretion.

### D. Palmer Expert Testimony

MEMORANDUM DECISION AND ORDER - 5

Harmony asks the Court to disqualify Palmer as an expert in this case. The familiar standard, under Rule 702 of the Federal Rules of Evidence and *Daubert*, requires that the trial judge ensure expert testimony is relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). To satisfy the requirements of Rule 702: (1) an expert's opinion must be based upon sufficient facts or data; (2) it must be the product of reliable principles and methods; and (3) the expert must have applied those principles and methods reliably to the facts of the case. Fed.R.Evid. 702; see also *Daubert*, 509 U.S. at 589; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148 (1999).

Harmony does not attack Palmer's expertise in the typical fashion. Instead, Harmony suggests he should be disqualified because he has conflicts of interest, magnified by his bias toward Harmony, and because his testimony would be prejudicial. Harmony essentially suggests that because Palmer has a pecuniary interest in the outcome of this case he cannot be an expert. Harmony cites cases suggesting the Court has inherent power to exclude prejudicial expert testimony, but the cases are not particularly on point.

Under these circumstances, the Court concludes that Harmony may cross-examine Palmer at trial about his bias toward Harmony, but his bias is not grounds for disqualification as an expert witness. Accordingly, the Court will deny the request to disqualify Palmer as an expert.

2. **Plaintiff's Motion for Determination of Claim of Protection as Trial-Preparation Material**

In response to a discovery request, Harmony produced, among other documents,

an email and fourteen images of Scentsy warmers. Harmony then asked Scentsy to return them, arguing that they are covered by the work product doctrine. Scentsy refused.

Harmony has the burden of proving that the work product doctrine applies. *In re Excel Innovations, Inc.*, 502 F.3d 1086 (9th Cir. 2007). That doctrine, set forth in Rule 26(b)(3), protects "from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *In re Grand Jury Subpoena*, 357 F.3d 900, 906 (9th Cir. 2004). If a document falls within the doctrine, the adverse party must then show a "substantial need [for] the materials" and "undue hardship [in obtaining] the substantial equivalent of the materials by other means." Fed.R.Civ.P. Rule 26(b)(3).

Harmony has not met its initial burden. Dave Hendrickson, a Harmony employee, sent the email to Harmony's CEO, Benjamin Chase, soon after this lawsuit was filed. The email states, "Here is what I found last night – Dave," and attaches photos of fourteen Scentsy warmers. In his declaration, Chase states that Hendrickson "located images of the Scentsy products at issue" and emailed them to Chase. *Chase Decl.*, ¶ 5, Dkt. 53-1. Chase does not indicate where the photos were "located."

Based upon this evidence, the Court cannot find that Harmony has made a showing that the email and attachments were created in anticipation of litigation. It may be that Hendrickson "located" the documents within Harmony's existing files, meaning they were already in existence, and not created in anticipation of litigation or trial. It is notable that Hendrickson has not indicated where he located the photos, or the specific purpose for which they were obtained. Surely, he would tell the Court where and why he obtained

them if they were created in anticipation of litigation. Simply put, Rule 26(b)(3) does not shield from discovery documents "located" by a company employee. Accordingly, the email and attachments are not covered by the work product doctrine.

Moreover, Harmony may not continue to designate the documents as Attorney Eyes Only ("AEO") under the Protective Order. The Protective Order states that a party may designate a document as AEO if it is not generally known to others, and has significant competitive value such that unrestricted disclosure to others would create a substantial risk of serious injury. *Protective Order*, ¶ 5, Dkt. 27. Harmony's argument for such a designation is that "their present confidentiality designations should be maintained given the context in which the records were prepared or obtained." *Def. Opp. Br.*, p. 5, Dkt. 53. The problem is we don't know how they were prepared or obtained; we only know that they were "located" by Hendrickson. Additionally, all the photos are of Scentsy warmers, and the Court can envision no way disclosure of those documents to Scentsy would create any sort of risk of injury to Harmony.

### 3.     Plaintiff's Motion to Cancel or Modify "Attorneys Eyes Only" confidentiality Designation

Scentsy asks the Court to order Harmony to re-designate forty-three[1] AEO documents Harmony provided to Scentsy. Scentsy suggests that the documents should be re-designated as Confidential instead of AEO pursuant to the Protective Order in this

---

[1] The motion addresses forty-five documents, but Harmony agreed to re-designate two of them.

**MEMORANDUM DECISION AND ORDER - 8**

case. The Protective Order indicates that AEO material includes,

> [I]information, documents, and things the Designating Party believes in good faith are not generally known to others, and has significant competitive value such that unrestricted disclosure to others would create a substantial risk of serious injury, and which the Designating Party (I) would not reveal to third parties except in confidence, or has undertaken with others to maintain in confidence, or (ii) believes in good faith is significantly sensitive and protected by a right to privacy under federal or state law or any other applicable privilege or right related to confidentiality or privacy.

*Protective Order*, ¶ 5, Dkt. 27. AEO material may only be viewed by authors, addressees, intended recipient, counsel of record, outside counsel of receiving party, the Court, arbitrators or mediators, court reporters, and professional vendors. *Protective Order*, ¶ 14, Dkt. 27. A designating party may designate as AEO information that the party believes, in good faith, meets the definition set forth above. *Protective Order*, ¶ 24, Dkt. 27. The receiving party may challenge an AEO designation, which the Court must resolve if the parties cannot agree. *Protective Order*, ¶¶ 31-34, Dkt. 27.

      The question here is whether the forty-three documents have significant competitive value such that unrestricted disclosure to others would create a substantial risk of serious injury. This standard is high. It does not apply when there is *any* risk or *any* injury – the risk must be *substantial* and the injury must be *serious*.

      The Court has reviewed all forty-three documents. None of them meet the high standard for designating them AEO. The Court will address them only in general terms here so as not to reveal any more confidential information than is necessary to explain the Court's ruling. In fact, the Court will address them based on the three categories they

**MEMORANDUM DECISION AND ORDER - 9**

were placed in by Harmony.

First is Harmony's confidential product design or manufacturing processes. A review of the documents reveals very little in the way of design and manufacturing. There are some emails that mention the manufacturing process with China, as well as some design ideas, but with very little detail. Re-designation of these few emails as confidential instead of AEO will not create a substantial risk of serious injury simply because certain Scentsy employees may see them and discuss them with their counsel.

Second is the Harmony products which have not been introduced to market, but may be at a later date. If these are re-designated as confidential instead of AEO, Scentsy still may only use them for purposes of this litigation, and for no other competitive purpose. *Protective Order*, ¶ 21, Dkt. 27. Therefore, allowing certain Scentsy employees to review these few products, which only *may* enter the market some day, will not create a substantial risk of serious injury.

The final category is confidential sales and marketing pitches to retailer clients. Scentsy is not in the retail market business. Thus, it is very unlikely that learning about Harmony's marketing pitches to retailers will provide Scentsy with a competitive advantage. Moreover, Scentsy cannot show the documents to Rimports or Palmer, Harmony's competitor in the retail business, so there is no substantial risk of serious injury there either. If Scentsy does provide the information to Rimports or Palmer, the resulting sanctions could be quite severe for both.

Finally, Harmony's argument that because Scentsy has produced many documents

**MEMORANDUM DECISION AND ORDER - 10**

with the AEO designation, Scentsy should somehow be prevented from opposing Harmony's AEO designations is without merit. That is not the standard for determining whether an AEO designation is proper. The real question is whether the documents have significant competitive value such that unrestricted disclosure to others would create a substantial risk of serious injury. As explained above, that is a high standard, and the Court believes very few documents need the AEO designation. In fact, it is the Court's experience that the parties typically agree on these few designations. The Court will note, however, that what is sauce for the goose is sauce for the gander. Thus, given this Court's view of the high AEO designation standard, Scentsy may find itself in the indefensible position of trying to retain its AEO designation of several documents if Harmony chooses to challenge them. Thus, it may be behoove the parties to make one more attempt at reaching agreement on AEO designations before requiring compliance with this Order. If they cannot agree, Harmony must re-designate the forty-three documents at issue as confidential instead of AEO, and Harmony may ask the Court to order Scentsy to re-designate some of its AEO documents if necessary.[2]

4.  **Defendants' Motion to Compel Forensic Examination and/or Other Appropriate Relief**

Harmony suggests that Scentsy has failed to produce key documents because of an insufficient litigation hold. Essentially, Harmony accuses Scentsy of spoliation.

---

[2] Obviously, the Court is not indicating how it would rule on a motion for Scentsy to re-designate its AEO documents. Scentsy may very well have properly designated them all. The Court is simply saying that now that the parties' have the Court's general approach to AEO designations, they may want to try to reach an agreement.

**MEMORANDUM DECISION AND ORDER - 11**

Spoliation occurs when a party destroys or alters evidence, or fails to preserve evidence for another party in pending or reasonably foreseeable litigation. Harmony asks the Court to compel Scentsy to conduct a forensic exam of its own computer systems at its own expense to retrieve any deleted discoverable data, or to order other appropriate sanctions.

A party engages in spoliation as a matter of law if they had some notice that the documents were potentially relevant to litigation before they were destroyed. See *U.S. v. Kitsap Physicians Service*, 314 F.3d 995, 1001 (9th Cir.2002). This often requires notice that the documents are relevant to the litigation. *Akiona v. U.S.*, 938 F.2d 158 (9th Cir.1991). Spoliation can occur even in the absence of bad faith. *Glover v. Bic Corp.*, 6 F.3d 1318 (9th Cir.1993).

Two sources allow a trial court to sanction a party who has despoiled evidence. First, "[a] federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). Second, the court may sanction a party under Rule 37 who "fails to obey an order to provide or permit discovery." *Leon v. IDX Systems Corp.*, 464 F.3d 951, 957 (9th Cir. 2006). But, "[a]bsent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system." Fed.R.Civ.P. 37(e).

The legal standards governing sanctions for spoliation typically depend on the timing of the spoliation. If the spoliation occurs before the litigation is filed, the sanctions

**MEMORANDUM DECISION AND ORDER - 12**

are generally governed by the inherent power of the Court to make evidentiary rulings in response to the destruction of relevant evidence. *Unigard Security Insurance Co. v. Lakewood*, 982 F.2d 363 (9th Cir.1992). If the spoliation occurs after the case is filed, Rule 37(b)(2) typically governs the sanctions. *Id*.

The party alleging spoliation has the burden to produce evidence suggesting that the destroyed evidence was relevant to its claims and would have been used at trial if not destroyed. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). The majority of courts have held that pre-litigation destruction can constitute spoliation when litigation was "reasonably foreseeable" but not where it was "merely possible." *Performance Chevrolet, Inc. v. Market Scan Information Systems, Inc.*, 2006 WL 1042359, *1 (D.Idaho 2006) (citing *Killelea, Spoliation of Evidence*, 70 Brooklyn L.Rev. 1045, 1050 (2005)).

Here, Scentsy, the plaintiff, did not issue a written litigation hold to anyone at Scentsy. Instead, its General Counsel, Eric Ritter, "spoke to the individuals that would have information regarding Harmony Homes or the subject warmers, and asked – requested that those documents not be deleted . . . ." *McFarland Decl.*, Ex. B, Ritter Depo., p. 38: 4-6, Dkt. 64-1. There is some dispute about when Scentsy first anticipated litigation in this matter, with Harmony suggesting it was May 2010, and Scentsy suggesting it was March 2011. The lawsuit was filed in May 2011. Ritter issued his oral litigation hold "roughly concurrent with the filing of the Complaint." *Id*. At p. 38: 12-13, Dkt. 64-1. Scentsy's document retention policy routinely deletes emails, but not other documents, that are over six months old. *Lane Decl.*, ¶ 7, Dkt. 60-3.

MEMORANDUM DECISION AND ORDER - 13

This case involves alleged trade dress infringement, copyright infringement, and related claims. The allegations relate to Scentsy warmers designed sometime between 2006 and 2009. Harmony has requested all documents related to the creation, design and development of those warmers.

Scentsy designer Julie Stewart was the lead designer for most of the warmers at issue – all but the three oldest. *McFarland Decl.*, Ex. C., Stewart Depo.,99: 9-15; 101: 5-15; 157: 2-4; 196: 14-15; 213: 18-21; 221: 4-8; 250: 4-13, Dkt. 64-1. Stewart did most of the design work using illustrator software on her computer. Stewart's computer hard drive was destroyed in early 2010. Scentsy sent the hard drive to a forensic computer specialist in an attempt to recover the lost material, but was unsuccessful. *Lane Decl.*, ¶ 3, Dkt. 64-2. This occurred before Scentsy knew Harmony existed. *McFarland Decl.* Ex. B, Ritter Depo. at 54: 15-19, Dkt. 64-1. Thus, Scentsy contends that even if it began contemplating litigation against Harmony in May 2010, any relevant documents not produced were long destroyed either under Scentsy's general retention policy or when its lead designer's computer hard drive failed.

The Court has serious concerns with Scentsy's retention policy and litigation hold process. Generally not deleting documents, and orally requesting certain employees to preserve relevant documents concurrently with filing a lawsuit, is completely inadequate. It is very risky – to such an extent that it borders on recklessness.  However, in this case there is very little chance that any of the documents at issue in the pending motion were destroyed because of the policy. The Court has been provided with no reason to question

**MEMORANDUM  DECISION AND ORDER - 14**

Scentsy's representation that the bulk of the documents were inadvertently destroyed when Stewart's hard drive crashed, and that this occurred before Scentsy even knew about Harmony. Scentsy has provided the Court with testimony, given under oath, to that effect. Harmony has provided no evidence to the contrary.

Moreover, all the warmers were designed and placed on the market no later than November 1, 2009. *McFarland Decl.*, Ex. A at 4-5, Ex. B, Ritter Depo. at 132:12-17, Dkt. 64-1. Thus, even if Scentsy contemplated suit in May 2010, as suggested by Harmony, the emails related to the design of the relevant warmers would have been already been deleted based on Scentsy's document retention policy – which deletes emails over six months old. *Lane Decl.*, ¶ 7, Dkt. 60-3.

However, there is a chance that some documents – particularly those related to the three warmers designed by someone other than Stewart – were destroyed after Scentsy anticipated this litigation. Scentsy's Vice President of Information Technology states that "[a]ll non e-mail documents saved to an employee's personal computer hard drive or to the Scentsy server are preserved indefinitely." *Lane Decl.*, ¶ 9, Dkt. 64-2. However, Scentsy's General Counsel, Eric Ritter, suggests there really is no retention policy for such documents. He does state that "[f]iles other than emails are stored in accordance with the file creator's intent. In other words, we don't delete data off of user drives." *McFarland Decl.*, Ex. B., Ritter Depo., 35: 20-22, Dkt. 64-1. Same goes for an Illustrator or Adobe file on a shared drive. *Id.* at 36:1-6. But he further states that if anybody at Scentsy created a Word document on their user drive, it "would remain there *until [he or*

**MEMORANDUM DECISION AND ORDER - 15**

*she] removed it from the user drive.*" *Id*. at 35: 23-25. The same is true for the Illustrator and Adobe files on a shared drive. *Id*. at 36: 7-8. Illustrator documents, which were typically used to design the warmers, were kept on personal computers or the Scentsy Server. *McFarland Decl.*, Ex. C., Stewart Depo., 42: 13-16, Dkt. 64-1.

Ritter did not issue his oral litigation hold until "roughly concurrent with the filing of the Complaint." *McFarland Decl.*, Ex. B, Ritter Depo., p. 38: 12-13, Dkt. 64-1. Thus, even if the Court accepts Scentsy's argument that it did not anticipate litigation until March 2011, there is at least a two-month window where these documents could have been destroyed by a user after Scentsy anticipated litigation if they were saved on a user computer or the server. If you accept Harmony's contention that Scentsy anticipated litigation as early as May of 2010, the window grows to 12 months. Regardless of which you accept, the Court recognizes that the likelihood that this occurred is slight. However, there is no way to know, and that uncertainty was caused by Scentsy's inadequate retention policy coupled with its late and imprecise litigation hold.

The remedy for Scentsy's inadequate policies is not simple to craft. Scentsy explains that, based upon a quote from an outside vendor, completing a forensic examination of its computer system would be lengthy and costly – even into the millions of dollars. *Lane Decl.*, ¶ 13, Dkt. 64-2. Harmony does not dispute this. Thus, ordering the forensic exam under these circumstances would be an undue burden and cost. Fed.R.Civ.P. 26(b)(2)(B).

However, Scentsy should not be completely let off the hook simply because the

cost is high. As explained above, the Court has inherent power to make evidentiary rulings in response to the destruction of relevant evidence if spoliation occurs before the litigation is filed. *Unigard Security Insurance Co. v. Lakewood*, 982 F.2d 363 (9th Cir.1992). Under these circumstances, the Court will allow Harmony to depose the appropriate individuals – whether it be the individuals who designed the three warmers not designed by Stewart, or someone else at Scentsy – to determine whether anyone destroyed relevant documents regarding those warmers. The deposition costs, including Harmony's attorney fees for taking the depositions, shall be paid by Scentsy. If information is uncovered that spoliation occurred, the Court will consider giving an adverse inference instruction at trial or dismissing some or all of Scentsy's claims. Spoliation is a serious matter, and Scentsy's document retention and litigation hold policies are clearly unacceptable. The Court assumes that Scentsy will improve those policies in any future litigation. The failure to do so may result in this or some other court finding that Scentsy's failure to act, in the face of the warnings given in this decision, constitutes the kind of wilfullness or recklessness which may result in serious repercussions.

**5.     Sanctions**

The Court will not award either party their costs and fees for the discovery motions. Each party prevailed on some of the issues and lost on others. Generally speaking, Harmony prevailed regarding disclosure of the Palmer settlement agreement, the Palmer deposition, and designating a witness to testify regarding communications

with Palmer. Scentsy generally prevailed regarding designating Palmer as an expert witness, the determination of protected material, and the AEO designation. The Court considers this a draw.

The spoliation issue is a bit different. While it is unlikely that relevant documents were destroyed, we can never be certain. That uncertainty, which can only be attributed to Scentsy's inadequate retention policies and litigation hold, is very troubling to the Court. Moreover, the Court views spoliation as a very serious matter with potentially serious consequences for the parties. Accordingly, the Court has, in essence, sanctioned Scentsy by requiring it to pay the deposition costs as outlined above, and by giving Scentsy a shot across the bow that if there is evidence that spoliation occurred, future consequences will be harsh.

## ORDER

**IT IS ORDERED:**

1. Defendants' Discovery Motions Regarding Jeffery Palmer (Dkt. 41) is **GRANTED in part** and **DENIED in part** as explained above.

2. Plaintiff's Motion for Determination of claim of Protection as Trial-Preparation Material (Dkt. 48) is **GRANTED** as explained above.

3. Plaintiff's Motion to Cancel or Modify "Attorneys' Eyes Only" Confidentiality Designation (Dkt. 49) is **GRANTED** as explained above.

4. Defendants' Motion to Compel Forensic Examination of Scentsy's Computer Systems and/or Other Appropriate Relief (Dkt. 59) is

**GRANTED in part** and **DENIED in part** as explained above.

DATED:  **October 2, 2012**

B. LYNN WINMILL
Chief U.S. District Court Judge