UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SCENTSY, INC., an Idaho corporation,<br><br>                    Plaintiff,<br>    v.<br><br>B.R. Chase, LLC., a Utah limited liability company; and HARMONY BRANDS, LLC., a Utah limited liability company,<br><br>                    Defendants. | Case No. 1:11-CV-00249-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Defendant Harmony Brands, LLC's Motion for Summary Judgment (Dkt. 89), and Plaintiff's Motion to Strike Unauthorized Summary Judgment Reply Materials, and Alternative Motion for Leave to Respond (Dkt. 120). The Court heard oral argument on the motions on March 13, 2013, and now issues the following decision.

## BACKGROUND

Both Scentsy, Inc. ("Scentsy") and Harmony Brands, LLC. ("Harmony") manufacture scented wax and wax warmer products. Scentsy sells its products through a party-plan distribution model. Harmony sells its products through a retail distribution network. In the remaining claims in this case, Scentsy contends that Harmony has infringed Scentsy's copyright and trade dress rights in a number of its warmers.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . .." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case."  *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings.  *Id.* at 255.  Direct testimony of the non-movant must be believed, however implausible.  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence.  *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076.  The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed.R.Civ.P. 56(e).  In determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003).  If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay. *Id*. (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony of contents would not be hearsay).

**MEMORANDUM DECISION AND ORDER - 3**

## ANALYSIS

### 1.      Copyright Claims

To prevail on a copyright infringement claim, a plaintiff "must demonstrate (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Benay v. Warner Bros. Entertainment, Inc.*, 607 F.3d 620, 624 (9th Cir. 2010) (Internal citations and quotations omitted). Harmony does not necessarily challenge the validity of Scentsy's copyrights in the registered warmers, but it does argue that Scentsy's claimed copyright protection is limited by the deposit copies submitted at registration. The Court will address that initial question before turning to the  copying issue.

### A.      *The Registration Certificate's Effect on the Scope of Scentsy's Copyright Protection.*

Section 408 of the Copyright Act requires authors who wish to register their copyrights to deposit a copy of the work, along with certain other application materials and a fee, with the Register of Copyright. 17 U.S.C. § 408(a). Where depositing an actual copy of the work is impractical, such as with three-dimensional sculptural works like Scentsy's warmers, the Register allows authors to submit "[a]s many pieces of identifying material as are necessary to show the entire copyrightable content in the ordinary case, but in no case less than an adequate representation of such content" in lieu of depositing a copy of the work. 37 C.F.R. §§ 202.20(c)(2)(xi), 202.21(b).

Harmony suggests that because Scentsy's identification materials did not disclose every element of its warmers in which it now claims a copyright, Scentsy cannot claim protection in those elements. Some history of the Copyright Act is helpful in understanding why that is not the case.

Under the Copyright Act of 1909, "federal copyright protection attached only upon publication, and even then, only if proper notice, registration, and deposit occurred." *Cosmetic Ideas, Inc. v. IAC/InteractiveCorp*, 606 F.3d 612, 618 (9th Cir. 2010). However, the Copyright Act of 1976 changed the copyright landscape to "vastly increase[] the scope of works subject to copyright protection." *Id.* at 619. Now, by the very terms of the Act, "registration is not a requirement of protection." 17 U.S.C. § 408(a). Rather, to the extent that Scentsy's warmers contain copyrightable elements, those elements gained copyright protection from the moment of their creation. *See* 17 U.S.C. § 302(a).

Likewise, the registration requirement does not limit the Court's authority to protect Scentsy's copyrights to their full extent. As Judge Kaplan of the Southern District of New York explained in a thoughtful opinion on the matter, courts engage in an independent evaluation of the "full panoply of copyright infringement issues" in such a suit. *Ward v. Nat'l Geographic Soc'y*, 208 F. Supp. 2d 429, 446 (S.D.N.Y. 2002). This is so because Congress enacted the permissive registration requirement to fulfill its interest in having a robust federal register of copyrights, not to give the Register the opportunity

to pass final judgment on the question of a work's copyrightability. *Id.* at 444-48; *see also Nat'l Conference of Bar Examiners v. Multistate Legal Studies, Inc.*, 692 F.2d 478, 487 (7th Cir. 1982) ("[T]he Copyright Act when viewed as a whole negates the notion that deposit requirements are for the purpose of delineating the scope of a copyright through public disclosure.").

Moreover, "[a]bsent intent to defraud and prejudice, inaccuracies in copyright registrations do not bar actions for infringement." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486 (9th Cir. 2000). Because "Harmony does not argue that Scensty's registrations are barred by 'inaccuracies' or 'errors,'" *Def.'s reply* at 2 n.1, dkt. 114, any omissions in Scensty's identifying materials will not limit the scope of the Court's inquiry into whether Harmony copied Scensty's registered warmers.

The decision in *Express, LLC v. Fetish Group, Inc.*, 424 F. Supp. 2d 1211 (C.D. Cal. 2006), on which Harmony relies, is not inconsistent with this conclusion. Admittedly, at first blush some of the language in the Central District case seems to contradict this Court's analysis.  *See e.g., id.* at 1218 ("The [c]ourt finds that it is the registration that sets the scope for the copyright protection."); *id.* at 1219 ("Again, this is consistent with the conclusion that the scope of a copyright is determined by the registration application."). Read in context, however, it seems clear that the court in *Express, LLC* meant that the scope of the presumption of validity which attaches to certain registered works under § 410(c) is limited by an author's disclosures. *See e.g., id.*

**MEMORANDUM DECISION AND ORDER - 6**

at 1219 ("The Court finds that the scope of the registered copyright is relevant to the

scope of the presumption of  validity, and that the scope of the registered copyright is

determined by the actual registration application."). To the extent the court in *Express,*

*LLC*  found otherwise, that portion of the decision is dicta, not binding on or persuasive

to this Court, and at odds with the general consensus among other courts.  In fact, the

Central District explained that "the scope of the registered copyright [was] not material in

[that] case." *Id.* at 1221.

### B.     *Direct Evidence of Copying*

The Court now turns to the issue of infringement. In most infringement suits,

answering the question of whether copying has occurred requires a comparison of

plaintiff's work with the allegedly infringing work to determine whether they are

"substantially similar" or "virtually identical," depending on the scope of the plaintiff's

copyright. *Mattel, Inc. v MGA Entm't, Inc.*, 616 F.3d 904, 913-14 (9th Cir. 2010). This

test will be discussed in more detail below.

In a limited set of infringement cases, however, it is unnecessary to make any

comparison because the plaintiff has direct evidence that the defendant infringed the

plaintiff's copyright. *Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir. 1989); *see also*

*Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012). But

"[a] finding that a defendant copied a plaintiff's work, without application of a substantial

similarity analysis, has been made only when the defendant has engaged in virtual

duplication of a plaintiff's entire work." *Narell*, 872 F.2d at 910. In such cases, "a substantial similarity analysis [is] unnecessary because the copying of the substance of the entire work [is] admitted." *Id*.

Although Scentsy has presented the Court with evidence that Harmony reviewed Scentsy's warmers as it designed its own warmers, and it seems clear that Scentsy warmers were the starting point for some of Harmony's warmers, Scentsy has not presented evidence that the Harmony warmers are "virtual duplications" of Scentsy's warmers. In fact, a simple view of Scentsy's copyrighted warmers and Harmony's warmers which Scentsy asserts infringe on them reveals similarities but no duplication. *Luvai Decl.*, Ex. S, Dkt. 92-19; *McFarland Decl*., Ex. PP, Dkt. 103-44. Accordingly, Scentsy cannot prove direct copying. Therefore, it is necessary to compare Harmony's warmers against Scentsy's registered warmers as explained below to determine whether Harmony infringed on Scentsy's copyright.

### C.    *Indirect Evidence of Copying*

Ninth Circuit precedent on how the Court should address indirect evidence of copying is somewhat disjointed. Some cases indicate that "[a]bsent evidence of direct copying, proof of infringement involves fact-based showings that the defendant had 'access' to the plaintiff's work and that the two works are 'substantially similar.'" *Funky Films, Inc. v. Time Warner Entertainment Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006). (Internal quotation and citation omitted). *See also Shaw v. Lindheim*, 919 F.2d 1353 (9th

Cir. 1990). According to *Funky Films*, "[t]he substantial-similarity test contains an extrinsic and intrinsic component." *Id. at* 1077. At the summary judgment stage, "courts apply only the extrinsic test; the intrinsic test, which examines an ordinary person's subjective impressions of the similarities between two works, is exclusively the province of the jury." *Id.* at 1077; *see also Benay*, 607 F.3d at 624.

A more recent Ninth Circuit case, *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904 (9th Cir. 2010), takes a similar but somewhat different approach. It also requires an initial finding of access – a question not in dispute in this case. It then applies the two-part extrinsic/intrinsic test. However, in *Mattel*, the Ninth Circuit did not say that the two-part extrinsic/intrinsic inquiry is the process for determining whether the products are "substantially similar." Instead, it stated that at the initial extrinsic stage, the Court must "examine the similarities between the copyrighted and challenged works and then determine whether the similar elements are protectable or unprotectable." *Id.* at 913. Ideas, standard features, and unoriginal components are not protectable. *Id.* After filtering them out, "what's left is the author's particular expression of an idea, which most definitely is protectable." *Id.* (emphasis removed).

To make that determination, the *Mattel* court stated that a court must begin by considering the breadth of the copyright protection. It noted that because others may legally copy a work's ideas and other unprotectable elements, the Court must start "by determining the breadth of the possible expression of those ideas." *Mattel,* 616 F.3d at

913. "If there's a wide range of expression (for example, there are gazillions of ways to make an aliens-attack movie), then copyright protection is 'broad' and a work will infringe if it's 'substantially similar' to the copyrighted work." *Id*. at 913-14. "If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is 'thin' and a work must be 'virtually identical'" to the copyrighted work *Id*. at 914. The *Mattel* court went on to state that "[t]he standard for infringement – substantially similar or virtually identical – determined at the 'extrinsic' stage is applied at the 'intrinsic' stage." *Id.* at 914 (citing *Apple Computer, Inc., v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994). "There – [at the intrinsic stage] – we ask, most often of juries, whether an ordinary reasonable observer would consider the copyrighted and challenged works substantially similar (or virtually identical)." *Id*.

In the end, these nuances in the application of the infringement test would likely make no difference to the outcome in this case. In either case the Court must apply the extrinsic/intrinsic test and determine whether there is protection, and whether it is broad or thin. However, because the *Mattel* decision is the more recent decision, because *Mattel* addresses three-dimensional objects analogous to the warmers in this case instead of literary works like those addressed in *Funky Films* and *Shaw*, and because *Mattel's*

**MEMORANDUM DECISION AND ORDER - 10**

approach seems to set forth a clearer road map, the Court will follow its guidance. Accordingly, the Court now turns to the extrinsic stage of the two-part test.[1]

### *(1)    Extrinsic Component*

The "extrinsic" component of the test asks whether the two works' objective aspects are similar. *Apple Computer, Inc., v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994). Because copyright exists only in an author's creative expression, it is proper to consider only those protected elements of Scentsy's registered warmers at this stage of the inquiry. *Id*. at 1443. In the world of copyright, creativity requires only a modicum of originality, "no matter how crude, humble, or obvious it might be." *Fiest Publications, Inc., v. Rural Tepephone Service Co., Inc.*, 499 U.S. 340, 345 (1991) (Internal quotation marks omitted). But although the bar for copyright protection is low, it is not nonexistent. The basic tools of creativity, like simple shapes and colors, cannot be copyrighted, but are free for all to use. *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 850 (9th Cir. 2012) (recognizing that a floral design "has elements that are not protectable, for example . . . the green color of [the] stems and leaves"). However, even where the individual elements of a work are not protectable in and of themselves, the work as a whole may still gain copyright protection. *Id.* at 849 ("Original selection, coordination, and arrangement of unprotectible elements may be protectable expression.").

---

[1] As noted above, there is no dispute about access in this case. Accordingly, the Court will skip that step as part of its analysis and simply not that Harmony had access to the Scentsy warmers.

Once the copyrightable elements are identified, the Court must determine the scope of the protection afforded to them. *Apple*, 35 F.3d at 1443. Harmony invokes the defensive doctrine of scènes à faire, whichrefers to the notion that less copyright protection is afforded to incidents, characters or settings which are as a practical matter indispensable or at least standard in the treatment of a given topic. *Evergreen Safety Counsel v. RSA Network Inc.,* 697 F.3d 1221, 1229 n. 2 (9th Cir. 2012).  Under that doctrine, "courts will not protect a copyrighted work from infringement if the expression embodied in the work necessarily flows from a commonplace idea." *ETS-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 765 (9th Cir. 2000). The rational being that "[t]he less developed the characters, the less they can be copyrighted; that is the penalty an author must bear for marking them too indistinctly." *Id.* at 766 (Internal quotation omitted). In such cases, courts will label a copyright as "thin" and only virtually identical copying will be considered illicit. *Id.*

At issue here are four of Scentsy's warmers: (1) Sendai; (2) Boleyn; (3) Snow Day; and (4) Kokopelli. Photos of these warmers and Harmony's alleged copies are attached to counsel's declarations. *See Luvai Decl.*, Ex. S, Dkt. 92-19; *McFarland Decl.*, Exs. PP & QQ, Dkts. 103-44 & 103-45.

There is undoubtedly a wide range of expression for scented wax warmers. A designer may vary the shape of the base, the shape of the melting tray[2], the arrangement, number and shape of holes used to release heat from the base, the color, the artwork, and the texture to name a few ways of altering the expression of the warmers. Thus, although the overall size of the entire warmer may be limited by what is necessary to allow it to work properly, the combination of the other elements is almost limitless. In this sense, they are not altogether unlike the dolls discussed in *Mattel*. In that case, the court determined that there was a wide range of expression for young, hip female fashion dolls with exaggerated features because they could be created with varying facial features and clothes. *Mattel*, 616 F.3d at 916. Like those dolls, all four warmers in this case shall be afforded broad copyright protection against substantially similar works.

Still, the Court must filter out any unprotectable elements when applying the substantially similar standard. *Mattel*, 616 F.3d at 915. Here, the following elements must be filtered out with respect to all four warmers: (1) a base and heating element; (2) a melting tray; and (3) holes for releasing heat. These elements relate only to a similarity of ideas, which are not copyrightable. After filtering these elements out, the Court must now turn to the intrinsic prong of the test.

### (2)    *Intrinsic Component*

---

[2] Melting tray is probably not the appropriate term for the top portion of the warmer, but the Court is attempting to make sure it is clear we are talking about the top of the warmer where the wax melts, and the term "melting tray" seems as good as any for making that distinction.

As explained above, the standard for infringement  determined at the extrinsic stage– substantially similar in this case – is applied at the intrinsic stage. *Id.* at 914. At the intrinsic stage, we ask whether an ordinary reasonable observer would consider the copyrighted and challenged works substantially similar. *Id*. Although this question is often left to the jury, and the Ninth Circuit has made clear that summary judgment on the substantial similarity issue in copyright cases is not highly favored, it has "frequently affirmed summary judgment in favor of copyright defendants on the issue of substantial similarity." *Funky Films*, 462 F.3d at 1076-77. On this issue, Ninth Circuit case law is again somewhat disjointed, with cases like *Funky Films* indicating that the intrinsic test is left to a jury, but that a district court may grant summary judgment if a plaintiff cannot satisfy the extrinsic test. *Id.* at 1077. But *Funky Films* did not apply the extrinsic/intrinsic test in the same manner as *Mattel* applied it – by determining the degree of protection during the extrinsic test and applying it during the intrinsic test. In *Mattel*, the circuit indicated that most often the intrinsic test is a question for the jury, but it did not preclude summary judgment. *Mattel,* 616 F.3d at 914.

In this case, the Court concludes that no jury could conclude that an ordinary reasonable observer would consider the copyrighted and challenged works substantially similar. In each case – Sendai, Boleyn, Snow Day, and Kokopelli – the challenged works are not substantially similar. With respect to Sendai and Boleyn, the only aspects Harmony may have copied are the general shape (four-sided pyramid shape with claw-

footed base and nearly flat square top) and possibly the spiral artwork on Harmony's Night Life warmer. Otherwise, the challenged works are not the same size in height or width, include holes in different places and different numbers, lack the recessed melting tray, are different colors, and have very different artwork. Excluding the unprotectable elements which the Court must filter out – a base and heating element, melting tray, and holes for releasing heat – the works lack similarity of expression.

As to Scentsy's Kokopelli warmer, we may have a closer call, but still not close enough that a jury could conclude that an ordinary reasonable observer would consider Harmony's challenged work  –  Ancient  –  substantially similar. Like the comparison of Sendai and Boleyn  to Harmony's challenged works, Kokopelli and Ancient are not the same size in height or width, include holes in different places and different numbers, and have different shaped melting trays. Although both warmers include a depiction of the Hopi fertility deity Kokopelli, the Court certainly cannot afford Scentsy a protectable interest in artwork Scentsy simply copied from another source. Moreover, the Kokopelli on Harmony's warmer is different from the one on Scentsy's warmer, except for the fact that both depict the very essence of Kokopelli – a humpbacked flute player. The two warmers do appear to have a similar overall color and leathered look, but Ancient has a contrasting black melting tray and lacks the more dimpled leathered look of Scentsy's Kokopelli warmer.

Finally, the Court turns to Scentsy's Snow Day and Harmony's Snowmen. These two warmers are probably the most alike and the most different. However, the similarities relate only to ideas, which are not protectable. Both have the same curve-shaped base and melting tray, a single row of evenly spaced holes, and snowmen and snowflake artwork. But Snow Day is white with a few silver snowflakes, while Snowmen is multi-colored. Snow Day has raised snowmen and snow art, but Snowmen is flat. Moreover, the snowmen depicted on each are very different except for the fact they are snowmen. Similar to the Hopi deity discussed above, the Court cannot afford Scentsy a protectable interest in the general design of snowmen and snowflakes.

Accordingly, the Court concludes that no reasonable jury could conclude that Harmony's challenged warmers are substantially similar to Scentsy's Sendai, Boleyn, Snow Day, or Kokopelli warmers. Therefore, the Court will grant Harmony summary judgment on Scentsy's copyright infringement claim.

## 2.    Trade Dress Claims

"Trade dress refers generally to the total image, design, and appearance of a product and may include features such as size, shape, color, color combinations, texture or graphics." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001) (Internal quotation and citation omitted). To sustain a claim for trade dress infringement, a plaintiff must prove three elements: "(1) that its claimed dress is nonfunctional; (2) that its claimed dress serves a source-identifying role either because it

is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product . . . creates a likelihood of consumer confusion." *Id.* at 1258.

Scentsy asserts that Harmony has infringed upon the trade dress of fourteen of its warmers – Sendai, Boleyn, Snow Day, Kokopelli, Symphony, Zebra, Tribeca, Fleur-de-Lis, Rustic Star, Liberty, Beaded White, Beaded Black, Satin Black, and Green. Although the trade dress claimed by Scentsy for each of these fourteen warmers is a bit different, they all relate to the basic shape of the base, the melting tray, the size and placement of the holes, the color, and the artwork. Scentsy does not suggest that the light bulb, cord, switch, and general split-bowl design make up the trade dress as asserted in an earlier case filed against Performance Manufacturing in this District.

### A.   *Nonfunctional*

A product feature is functional and may not serve as a trademark if the feature is "essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant, non-reputation-related disadvantage." *Id.* (Internal quotation and citation omitted). The party asserting trade dress protection bears the burden of proving that the matter sought to be protected is not functional. *TrafFix Devices, Inc. v. Marketing Displays, Inc.,* 532 U.S. 23, 29 (2001).

To determine functionality, the Ninth Circuit typically considers four factors: "(1) whether advertising touts the utilitarian advantages of the design, (2) whether the

particular design results from a comparatively simple or inexpensive method of

manufacture, (3) whether the design yields a utilitarian advantage and (4) whether

alternative designs are available." *Talking Rain Beverage Co., Inc. v. South Beach

Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003) (Internal citation omitted). No single

factor is dispositive though – each should be weighed collectively. *Id.* (Citing *Disc Golf

Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998).

      Even if individual elements of the trade dress may be functional, the trade dress as

a whole is not necessarily functional. *Id*. But "'where the whole is nothing other than

assemblage of functional parts, and where even the arrangement and combination of the

parts is designed to result in superior performance,' there is no basis to conclude the trade

dress as a whole is non-functional." Apple*, Inc. v. Samsung Electronics, Co., Ltd.*, 2012

WL 2571719, *3 (N.D.Cal 2012) (Citing *Leatherman Tool Grp., Inc. v. Cooper Indus.*,

Inc., 199 F.3d 1009, 1013 (9th Cir.1999). Functionality is a question of fact. *Clicks*, 251

F.3d at 1258.

### (1)    *Advertising*

      The only evidence Scentsy placed before the Court regarding advertising as it

applies to functionality is the testimony of its chief marketing officer, Mark Stastny, who

simply stated that Scentsy's advertisements and marketing materials focus the consumer

on the "beauty of the product" so that customers will want to display the warmers in their

homes even when not otherwise operating. *Stastny Decl.*, ¶ 3, Dkt. 105. Stastny stated

that Scentsy does not "tout the utilitarian advantages" of its warmers. *Id.* However, the record lacks any evidence of such advertising and marketing materials. A blanket statement that Scentsy advertises in a certain way is not sufficient evidence to satisfy the advertising prong of a trade dress claim in the face of a motion for summary judgment.

Moreover, the beauty of the product is utilitarian for scented wax warmers displayed in homes. There can be no doubt consumers purchase warmers based at least in part on how they look and whether they fit within in the decor of the place they intend to use the warmer. Thus, touting the beauty of the warmer is touting its utilitarian advantages.

### (2)    *Manufacture*

"Design choices that reflect cost-cutting or simplified manufacturing processes or otherwise unproved methods of manufacture imply functionality. *Samsung*, 2012 WL 2571719, *3. (citing *Talking Rain*, 349 F.3d at 604). Scentsy's design expert testified that the trade dress elements of Scentsy's warmers often increase the manufacturing cost, and either have no effect or even lessen their functionality. *McFarland Decl.*, Ex. F.

This element of the test does not seem particularly important given the facts of this case, where Scentsy is asserting trade dress protection for several of its many warmers. Cost-cutting manufacturing is important where a company produces one product without much variance. However, in a case like this, even though it may cost a bit more to manufacture certain warmers, every wax warmer company must produce more than one

design to stay in business, which will increase manufacturing costs to some degree. As noted above, part of the functionality of the warmers is that they are aesthetically pleasing or fit within certain decorative themes. Producing one easily manufactured warmer style would not be a sustainable business in the scented wax warmer business. Thus, manufacturing, when weighed with the other factors in this case, is essentially a non-factor.

### (3)    *Utilitarian Advantage*

The more the product design makes an item useful to the consumer, the more it suggests functionality. *Talking Rain*, 349 F.3d at 604. Again, wax warmers are used for fragrance  purposes, but also as decoration. Otherwise, there would be no reason to create so many different designs. In their own way, each of the warmers at issue here – indeed, every warmer created – fulfills its intended function based, to some degree,  upon how it looks.

### (4)    *Alternative Designs*

Existence of alternative designs suggests that design choices are aesthetic as opposed to functional. *Samsung,* 2012 WL 2571719, *5. But "the existence of alternative designs cannot negate a trademark's functionality." *Talking Rain,* 349 F.3d at 603. Similar to the manufacture and utilitarian advantage elements, the fact that alternative designs are available does not apply in this case as it does in many cases. The aesthetics of the warmers function as decoration.

### *(5) Functionality When Weighed Collectively.*

As mentioned above, the functionality elements must be weighed collectively. *Talking Rain Beverage Co., Inc. v. South Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003). Doing so in this case, the Court finds that no reasonable juror could conclude that the trade dress claims for any of the fourteen warmers at issue are non-functional. Alternative designs are part of the wax warmer business, the trade dress design elements have utilitarian advantages, simplified manufacturing is essentially a non-issue, and, if anything, Scentsy's advertising touts the beauty of the products – which is a utilitarian feature for scented wax warmers. Thus, the claimed trade dress is functional, and Scentsy has not presented evidence creating a genuine issue of material fact as to whether its fourteen warmers are nonfunctional. Accordingly, the Court need not address secondary meaning or likelihood of consumer confusion, and the Court will grant summary judgment in favor of Harmony.

## ORDER

**IT IS ORDERED:**

1.     Defendant Harmony Brands, LLC's Motion for Summary Judgment (Dkt. 89) is **GRANTED**.

2.     Plaintiff's Motion to Strike Unauthorized Summary Judgment Reply Materials, and Alternative Motion for Leave to Respond (Dkt. 120) is **GRANTED in part**

and **DENIED in part**. The Court reviewed Scentsy's sur-reply which it deems filed.

3.      The Court will enter a separate judgment in accordance with Fed. R. Civ. P. 58.

DATED: April 30, 2013

B. Lynn Winmill
Chief Judge
United States District Court