## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SCENTSY, INC., an Idaho corporation,<br><br>  Plaintiff,<br>v.<br><br>B.R. Chase, LLC., a Utah limited liability company; and HARMONY BRANDS, LLC., a Utah limited liability company,<br><br>  Defendants. | Case No. 1:11-CV-00249-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Harmony Brands, LLC's Motion for Attorneys' Fees and Costs (Dkt. 134). The motion is fully briefed and at issue. The Court has determined that oral argument would not significantly assist the decisional process and will therefore consider the matters without a hearing. Being familiar with the record and having considered the parties' briefing, the Court will grant the motion and award $396,207.50 in fees and costs to Harmony against Scentsy.

## BACKGROUND

Both Scentsy, Inc. ("Scentsy") and Harmony Brands, LLC. ("Harmony") manufacture scented wax and wax warmer products. On May 26, 2011, Scentsy filed suit contending that Harmony had infringed Scentsy's copyright and trade dress rights in a number of its warmers. (Dkt. 1). After both sides engaged in extensive discovery,

Harmony moved for summary judgment. On April 30, 2013, the Court entered its Memorandum and Decision Order (Dkt. 125) granting summary judgment to Harmony.

Harmony then filed its pending motion for attorneys' fees in the amount of $364, 976.00, and for costs in the amount of $31, 231.50, claiming that the attorney fee recovery provisions of the Copyright Act and the Lanham Act justify awarding Harmony its reasonably incurred costs and fees. (Dkt. 134). Scentsy filed a response arguing that Harmony's fee request is inappropriate and should be denied. (Dkt. 149).

## LEGAL STANDARD

### 1.  The Lanham Act Fees Provision

The Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "A case may be considered exceptional when a plaintiff's case is groundless, unreasonable, vexatious, or pursued in bad faith." *Applied Information Sciences Corp. v. eBay, Inc.*, 511 F.3d 966, 973 (9th Cir. 2007) (internal citation and quotation omitted). The decision to award fees under the Latham Act lies within the discretion of the court. *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir. 1993)**.** In general, attorney's fees are awarded to the prevailing party under the Lanham Act if (1) the prevailing party can show bad faith on the part of the opposing party or (2) there was an absence of "debatable issues of law and fact" in support of the opposing party's claims. *Stephen W. Boney, Inc. v. Boney Servs.*, 127 F.3d 821, 827 (9th Cir. 1997).

**MEMORANDUM DECISION AND ORDER - 2**

**2.  The Copyright Act Fees Provision**

Section 505 of the Copyright Act gives courts discretion to "allow the recovery of full costs" and "reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505.  The Ninth Circuit stated that a court should exercise its discretion in light of several non-exclusive considerations, including (1) the degree of success obtained; (2) frivolousness; (3) objective unreasonableness "both in the factual and legal arguments in the case"; (4) motivation; and (5) the need "to advance considerations of compensation and deterrence." *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).

In weighing these factors, "[c]ourts should keep in mind the purpose[] of the Copyright Act," which is to "promote creativity for the public good." *Id.* Though a court's discretion may be influenced by the plaintiff's culpability, "blameworthiness is not a prerequisite to awarding fees to a prevailing defendant." *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996). Overall, "[f]aithfulness to the purposes of the Copyright Act is . . . the pivotal criterion." *Id.*

## ANALYSIS

The Lanham Act and the Copyright Act provide different standards for awarding attorney's fees. The standard for awarding fees under the Lanham Act is "significantly stricter than the standard" for the Copyright Act. *FASA Corp. v. Playmates Toys, Inc.*,

108 F.3d 140, 143 (7th Cir. 1997). Therefore, the Court will analyze the two portions of Scentsy's case separately.

## 1. Scentsy's Trade Dress Claims

Harmony argues that the Court should find this case exceptional and award attorney's fees under the Lanham Act. Harmony asserts that Scentsy's trade dress claims were groundless, unreasonable, and pursued in bad faith. After a review of the record, the Court finds that this case meets the Lanham Act's "exceptional case" standard.

A claim is unreasonable and groundless under the Lanham Act when there is "no reasonable or legal basis to believe in success on the merits." *Secalt S.A. v. Wuxi Shenxi Const. Mach. Co., Ltd.*, 668 F.3d 677, 687-88 (9th Cir. 2012) (citing *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1156 (9th Cir. 2002); *see also Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1216 (9th Cir. 2003) (holding that a "dilution of trademark claim was groundless and unreasonable because it had no legal basis"). Scentsy's trade dress claims required Scentsy to prove three elements: "(1) that its claimed dress is nonfunctional; (2) that its claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product . . . creates a likelihood of consumer confusion." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001). When Scentsy filed its claim against Harmony, there was no reasonable basis to believe in success at establishing any of the three elements.

First, Scentsy could not present evidence that its fourteen warmers were nonfunctional. As outlined in the Court's Memorandum and Decision Order (Dkt. 125), Scentsy's claimed trade dress is aesthetically functional: the design elements have utilitarian advantage, alternative designs are part of the wax warmer business, and, if anything, Scentsy's advertising touts the beauty of the products—which is a utilitarian feature for scented wax warmers. Scentsy warmers require aesthetically pleasing dress in order to perform their essential decorative function. Given the functional nature of Scentsy's trade dress, its claim was groundless.

Second, Scentsy could not have established a debatable issue of fact as to whether its trade dress serves a source-identifying role. Scentsy's claim involved fourteen warmers of varying shapes, sizes, and design. Scentsy has not pointed to any style or feature of any of the fourteen warmers that is source identifying.  The fact that Scentsy produces so many different styles of warmers makes it appear that there is no "consistent definable style or image that [is] source identifying" on any of its warmers. *Scentsy, Inc. v. Performance Manufacturing, Inc.* Case No. CV08-553-S-EJL, at *23 (D. Idaho April 3, 2009) (finding Scentsy's source identifying arguments for a line of warmers unpersuasive). Without evidence of a source-identifying role, Scentsy's claim was groundless and unreasonable.

Third, Scentsy was unreasonable to believe it could establish confusion in the marketplace resulting from Harmony's products and packaging. Harmony and Scentsy's

warmers have different names, packaging, and logos. Additionally, they are sold in a different manner in the marketplace—Harmony sells its warmers at retail stores and Scentsy sells through Scentsy consultants. There is nothing to indicate that consumers, encountering Harmony warmers as packaged and advertised in the marketplace, would confuse Harmony warmers with Scentsy warmers. When Scentsy brought a similar trade dress claim in this District, Judge Lodge stated that "the Court simply cannot see the confusion between the two." *Scentsy, Inc. v. Performance Manufacturing, Inc.* Case No. CV08-553-S-EJL, at *23 (D. Idaho April 3, 2009). Given Judge Lodge's prior opinion, Scentsy should have known its confusion argument was groundless.

Taking into account all three elements of a trade dress claim, Scentsy had "no reasonable or legal basis to believe in success on the merits." *Secalt*, 668 F.3d at 687-88. Thus, Scentsy's trade dress claims were groundless and unreasonable. This finding is sufficient to establish an exceptional case under the Lanham Act. *Stephen W. Boney,* 127 F.3d at 827. Accordingly, the Court need not address bad faith, and the Court will award Harmony's reasonable attorneys' fees accrued in defense of Scentsy's trade dress claims.

**2. Scentsy's Copyright Claims**

Harmony also argues that the Court should award its attorneys' fees accrued in defense of Scentsy's copyright claims. Taking into account the factors outlined by the Ninth Circuit in *Jackson*, 25 F.3d at 890, and the purposes of the Copyright Act, the Court finds Harmony is entitled to its reasonable attorneys' fees.

The first factor, the degree of success obtained, weighs in Harmony's favor. Harmony won on all of Scentsy's claims, including its copyright claims.

The next two factors, frivolousness and objective unreasonableness, do not favor either party. A claim is frivolous if "the result is obvious, or the arguments of error are wholly without merit.' *Wilcox v. Commissioner*, 848 F.2d 1007, 1009 (9th Cir. 1988). Scentsy's argument that Harmony engaged in direct copying was meritless and the result was obvious. A simple view of Scentsy's copyrighted warmers and Harmony's warmers which Scentsy asserts infringed on them reveals similarities but no duplication. *MDO* at 8, Dkt. 125. Scentsy's argument that Harmony's warmers were substantially similar was, however, a closer call. Although the Court determined that no jury would conclude in Scentsy's favor, "[d]eterminations about substantial similarity are rarely obvious." *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 444 (9th Cir. 1991). Losing on this argument does not make Scentsy's argument frivolous. Given the slight similarities between the warmers and Scentsy's broad copyright protection, Scentsy's substantial similarity argument was not objectively unreasonable.

Turning to the fourth factor, motivation, Harmony contends that Scentsy pursued this action "motivated by anti-competitive and extra-judicial considerations." *Memo in Support* at 12, Dkt. 143. Harmony's evidence of bad faith is unconvincing. Harmony relies mainly on Scentsy's actions during discovery as an indication of bad faith. During discovery there were many issues disputed by both parties that required mediation.

MEMORANDUM DECISION AND ORDER - 7

However, there is no indication that Scentsy was attempting to do anything other than protect its copyrighted expressions. Therefore, this factor weighs in Scentsy's favor.

The fifth factor, the need "to advance considerations of compensation and deterrence," will be viewed in light of the purposes of the Copyright Act. *Jackson*, 25 F.3d at 890. The Copyright Act's "ultimate aim is . . . to stimulate artistic creativity for the general public good." *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975). A successful defense of a copyright claim can increase public exposure to creative works and stimulate creativity. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994). "Thus a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright." *Id.* Accordingly, defendants who have meritorious defenses should "be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Id.*

Here, Harmony has advanced a successful defense to Scentsy's claim at considerable expense to Harmony. A reward of attorney's fees will encourage Harmony, and others similarly situated, to litigate meritorious defenses, rather than settling to avoid the high costs of litigation. Moreover, it will increase creativity by assuring authors and inventors that they can "build freely upon the ideas and information conveyed by a work" without threat of meritless copyright litigation. *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 349–350 (1991). Scensty argues that awarding

Harmony's attorneys' fees will stifle creativity because inventors, like Scentsy, will be disincentivized to invest in artistic expression due to the high risks associated with defending a copyright. Though an award of attorneys' fees in this instance may discourage some weak cases from being brought, it should not discourage plaintiffs from bringing meritorious claims.

Weighing all the factors, the Court finds that the Copyright Act warrants an award of attorney's fees to Harmony. Harmony has successful defended against a meritless copyright claim and compensation will advance the purposes of the Copyright Act. Accordingly, Harmony's reasonable attorneys' fees and costs expended defending itself against Scentsy's copyright claims will be awarded.

## 3.  Determination of Reasonable Fees and Costs

Harmony will be awarded its reasonable attorneys' fees and costs accrued in defense all of Scentsy's claims. Because Harmony is entitled to fees under both the Lanham Act and the Copyright Act, there is no need to divide Harmony's expenses between the two separate claims. The Court will analyze Harmony's fees and costs accrued throughout litigation as a whole.

### A.  *Harmony's Attorneys' Fees*

The Lanham Act and the Copyright Act allow for recovery of reasonable attorneys' fees. To determine a reasonable fee award, the Court must engage in a two-step inquiry. First, the Court must calculate the "lodestar figure" by multiplying the

number of hours reasonably spent on the litigation by a reasonable hourly rate. *See, e.g.,*

*Fischer v. SJB—P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). Second, the Court must

decide whether to enhance or reduce the lodestar figure based on several factors—known

as the Kerr factors—to the extent those factors are not already subsumed in the initial

lodestar calculation. Id. The relevant Kerr factors are: (1) time limitations imposed by the

client or the circumstances; (2) the amount involved and the results obtained, (3) the

experience, reputation, and ability of the attorneys, (4) the "undesirability" of the case,

(5) the nature and length of the professional relationship with the client, and (6) awards in

similar cases. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

### (1) Reasonable Rate

To determine a reasonable hourly rate, the district court looks to hourly rates

prevailing in the relevant legal community for similar work performed by attorneys of

comparable skill, experience, and reputation. *Ingram v. Oroudjian*, 647 F.3d 925, 928

(9th Cir. 2011) (per curiam). The "relevant legal community" is generally the forum in

which the district court sits. *Mendenhall v. NTSB*, 213 F.3d 464, 471 (9th Cir. 2000).

Here, the attorneys and staff involved request the following rates: John N.

Zarian—$320.00 and $250.00; Kennedy Luvai—$185.00 and $175.00; Derek Langton—

$350.00 and $250.00; William J. Evans—$325.00 and $250.00; John Delaney—$265.00

and $250.00; Dana M. Herberholz—$200 and $175; Jeffery M. Sanchez—$175;

Benjamin Hoopes—$175; Chris Cuneo—$200; Jamie K. Ellsworth—$175; Todd

Zeneger—$390; Josh Sweet—$85.00; Judy L. Holder—$75.00; Sonja C. Peterson—

$85.00; Heather Hagan—$65.00; and Kaley B. Richmond—$85 and $55. Attorney

Zarian submitted an affidavit stating that these are reasonable rates in Boise, the relevant

community where the case was filed. Scentsy does not object to these rates, and the Court

finds they are reasonable.

### (2) Reasonable Hours Expended

Next, the Court must determine whether the time spent on this case—2,063.70

hours—was reasonable. Scentsy argues that Harmony billed an unnecessary number of

attorneys an unreasonable number of hours for work on this case. Scentsy cites to several

instances of alleged duplicative work and unreasonable time spent on tasks. Harmony

responds that the hours spent to defend itself are reasonable and that there is no evidence

to support Scentsy's claims. Having reviewed the documents, the Court finds that the

services identified and hours spent are reasonable.

First, Scentsy claims Harmony used an unnecessary number of attorneys to review

Harmony's insurance policy. Though Harmony may have used several attorneys to

review its insurance documents, the record shows that the attorneys only spent a total of

2.6 hours reviewing the insurance policy. This low number of hours is not unreasonable.

Next, Scentsy claims that Harmony's motion to dismiss—requiring 74.1 hours of

researching and drafting—could have been addressed with a simple phone call and did

not need to be filed. However, given the complexity of Scentsy's claims, it was not

unreasonable to spend 74.1 hours preparing a response and motion to dismiss. Moreover, Harmony's Motion to Dismiss contained several meritorious defenses that caused Scentsy to significantly amend its complaint. The time spent on the motion was justified.

Additionally, Scentsy points to the number of attorneys participating in two conference calls as evidence of duplicative work and overbilling. The two conference calls Scentsy cites were attended by multiple attorneys. However, given the complex nature of this case, many issues can arise during telephonic conferences requiring attorneys working on different aspects of the case to participate and respond. There is no indication that the hours billed for these conference calls were unnecessary or duplicative.

Scentsy also points to 3 hours billed for preparing an e-mail memorandum as evidence of a pattern of overbilling. The records shows one attorney working on several different "e-mail memorandum to file" on June 21, 2012. *See Zarian Dec., Exh. 2-H*, Dkt. 142-1. The memorandums each address different issues regarding a protective order and discovery. None of the hours billed for this work are unreasonable or vague.

Finally, Scentsy argues that Harmony spent an excessive number of hours responding to a mediation questionnaire (15.1 hours), reviewing documents (78 hours), briefing its Motion to Compel Forensic Examination (48.7 hours), and preparing its Motion for Summary Judgment (420.6 hours). None of these hours are unreasonable. The time spent preparing for mediation represents a commitment to dispute resolution. It was

not unreasonable for Harmony to prepare thoroughly for possible mediation. The time spent reviewing documents produced by Jon Tingey and Sarah Hanks was reasonable given the extensive number of documents that had to be reviewed for responsiveness and privilege. The time spent briefing Harmony's Motion to Compel was reasonable given Scentsy's failure to institute appropriate discovery practices. And, finally, the time spent on the Harmony's Motion for Summary judgment was reasonable in light of the motion's success at resolving the suit.

### (3) Adjustment of Lodestar Amount

"The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower court[ ] that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). This is not a rare or exceptional case where the lodestar amount is unreasonably low or high. The Court will therefore award Harmony the sum of $364,976.00 in attorneys' fees.

### B.  Harmony's Costs

In addition to the taxable costs allowed by 28 U.S.C. § 1920, Harmony seeks generally non-taxable costs for Westlaw research and e-discovery. Scentsy objects to Harmony's claimed Westlaw research costs and e-discovery costs, claiming they are non-

recoverable. Harmony asserts that Scentsy's objections to Harmony's bill of costs are untimely and should be disregarded. Additionally, Harmony argues that the Lanham Act and the Copyright Act allow recovery of Harmony's non-taxable costs.

Local Rule 54.1(a) requires objections to the bill of costs be filed within 14 days after service. Scentsy's objections, filed June 24, 2013, were filed well outside of the 14 day time frame and are untimely. Therefore, Scentsy's objections should be denied.

In addition, Scentsy's objections should be denied because Harmony's claimed costs are recoverable. The Lanham Act and the Copyright Act allow recovery of reasonable costs that are otherwise non-taxable under 28 U.S.C. § 1920. *See Secalt*, 668 F.3d at 690 (holding that "attorney's fees under the Lanham Act may also include reasonable costs that the party cannot recover as the 'prevailing party.'"); *Twentieth Century Fox Film Corp. v. Entertainment Distributing*, 429 F.3d 869, 884–85 (9th Cir. 2005) (holding that "district courts may award otherwise non-taxable costs, including those that lie outside the scope of § 1920, under § 505"). As outlined below, both Harmony's computer-based research costs and its e-discovery costs are reasonable.

The Ninth Circuit has held that computer-based legal research costs may be recovered "if separate billing for such expenses is 'the prevailing practice in the local community.'" *Trustees of Const. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258–59 (9th Cir. 2006) (quoting *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 287). Scentsy's counsel has not stated that they bill their clients in a

different manner than Harmony's counsel or offered evidence that separate billing is not prevailing practice in Idaho. Moreover, in *Bjornson v. Dave Smith Motors/Frontier Leasing & Sales*, 578 F. Supp. 2d 1269, 1289 (D. Idaho 2008), a court in this District found that separate billing of computerized research was appropriate practice for a firm located in Idaho. Based on the information before the Court, separate billing appears to be acceptable practice in Idaho. Additionally, there is no indication that Harmony's research costs were unreasonable. In light of the length of discovery and numerous disputes briefed and brought before the Court, Harmony's costs appear reasonable. Accordingly, the Court finds that Harmony's Westlaw research costs are recoverable.

Courts have found e-discovery costs reasonable and recoverable if they were "not accrued merely for the convenience of counsel." *Tibble v. Edison Int'l*, CV 07-5359 SVW AGRX, 2011 WL 3759927 (C.D. Cal. Aug. 22, 2011) *aff'd*, 11-56628, 2013 WL 1150788 (9th Cir. Mar. 21, 2013) (awarding costs accrued in response to Plaintiff's numerous requests for production of documents); *See, e.g.*, *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 167 (3d Cir. 2012) *cert. denied*, 133 S. Ct. 233 (U.S. 2012) (holding that the cost of "the conversion of native files to TIFF (the agreed-upon default format for production of ESI)" was recoverable); *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009) (holding that the costs of "converting computer data into a readable format in response to plaintiffs' discovery requests ... are recoverable"). Here, Harmony's e-discovery costs were mainly accrued in response to Scentsy's discovery requests (e.g.

the majority of the costs are for converting materials into the agreed upon .tiff format).

Scentsy has not identified any costs that are "merely for the convenience of counsel." *Id.*

Therefore, Harmony's e-discovery costs are recoverable.

## CONCLUSION

Harmony is entitled to a full award of its reasonable attorneys' fees in the amount of $364, 976.00, and for costs in the amount of $31, 231.50.

## ORDER

**IT IS ORDERED:**

1. Defendant Harmony Brands, LLC's Motion for Attorneys' Fees and Costs (Dkt. 134) is **GRANTED**.

2. Consistent with the above Memorandum Decision, Defendants are awarded $364,976.00 in attorney fees, and $31,231.50 in costs, for a total judgment of $396,207.50.

3. Judgment will be entered separately.

DATED: August 26, 2013

B. Lynn Winmill
Chief Judge
United States District Court

**MEMORANDUM DECISION AND ORDER - 16**